**Jack W. FRIEND; Michael Wethern; Jeffrey D. Gray, Plaintiffs–Appellants,**

v.

**Ronald KOLODZIECZAK, Harold Estes; Chuck Green; R.A. Frist; A. Theobald, Defendants–Appellees.**

No. 89–16703.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1990.

Memorandum Filed Oct. 24, 1990.

Order and Opinion Filed Jan. 3, 1991.

Sue Ochs, San Francisco, Cal., for plaintiffs-appellants.

Richard L. Reynolds, Maureen C. Brooks, Bennett, Samuelsen, Reynolds & Allard a Professional Corp., Oakland, Cal., for defendants-appellees.

Before GOODWIN, Chief Judge, BROWNING and RYMER, Circuit Judges.

### ORDER

The request for publication is GRANTED. The memorandum disposition filed in this case on October 24, 1990 is hereby designated as an opinion.

### OPINION

GOODWIN, Chief Judge:

In this class action, inmates of Alameda North County Jail appeal the summary judgment in their section 1983 action challenging as unconstitutional a prison regulation prohibiting them from possessing rosaries and scapulars in their cells. We affirm.

On behalf of all Roman Catholic prisoners of the North County Jail, plaintiffs alleged in their complaint that the defendants denied them (1) the right to possess rosaries and scapulars in their cells, and (2) the opportunity to attend Roman Catholic services and to participate in religious sacraments performed by a Roman Catholic priest. They sought declaratory and injunctive relief and damages.

The defendants' answer generally denied that they had refused plaintiffs access to Roman Catholic services and sacraments, but admitted that the plaintiffs were not permitted to possess rosaries and scapulars in their cells.

The plaintiffs were prohibited from keeping rosaries and scapulars in their cells pursuant to a jail policy limiting items that inmates may have in their cells to items supplied by the jail or miscellaneous small items approved by a deputy at the jail. All other items are considered contraband.

Prior to the district court's ruling on cross motions for summary judgment, the parties agreed that the only remaining issue was whether the defendants could bar the plaintiffs from possessing rosaries and scapulars in their cells. The defendants' alleged failure to grant the plaintiffs access to Roman Catholic services and sacraments was no longer in issue, because the defendants scheduled a regular time and location for Roman Catholic services, promulgated rules allowing inmates an opportunity to participate in the Roman Catholic sacraments of confession and communion, and established a policy allowing inmates to use rosaries and wear scapulars during religious services and meetings with religious visitors.

The district court found that the defendants had legitimate security and administrative reasons for banning rosaries and scapulars, and that the plaintiffs retained the ability to practice Roman Catholicism.

■ Inmates retain their First Amendment right to free exercise of religion; however, this right is limited by virtue of their incarceration. *O'Lone v. Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). Prison regulations are examined under a reasonableness standard that is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349, 107 S.Ct. at 2404. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In determining whether the regulation is "reasonably related to legitimate penological interests," four factors should be considered ("the *Turner* test"):

(1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it;

(2) whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates;

(3) the impact that accommodation of the asserted right will have on guards, other inmates, and prison resources; and

(4) the absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

*Friedman v. Arizona,* 912 F.2d 328, 331 (9th Cir.1990), *citing Harper v. Walling-*

*ford,* 877 F.2d 728, 732 (9th Cir.1989) (emphasis in original); *see also Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–2262. All four factors weigh in favor of the regulation.

### (1) *Logical Connection to a Legitimate Penological Interest*

The defendants introduced evidence that the purpose of the underlying policy prohibiting inmates from possessing items of personal property not supplied by the jail is to limit the means by which inmates may obtain drugs, fabricate weapons and otherwise disrupt jail security. The defendants also introduced evidence that allowing plaintiffs to possess rosaries and scapulars could threaten jail security by creating an impression of favoritism toward Roman Catholic prisoners, thereby generating resentment, envy and intimidation. These are legitimate penological interests. *See Standing Deer v. Carlson,* 831 F.2d 1525, 1529 (9th Cir.1987) (upholding a prison regulation banning the wearing of headgear in the prison dining room against a free exercise challenge by Native Americans in part on the ground that "special arrangements for one group could create an appearance of favoritism that could generate resentment and unrest.")

### (2) *Alternative to Exercise Right*

Here, the plaintiffs have alternative means of practicing Roman Catholicism in addition to having periodic access to rosaries and scapulars. The parties do not dispute that Roman Catholic inmates may: (1) attend Roman Catholic services weekly; (2) use rosary beads and scapulars during these religious services; (3) receive sacraments of the Roman Catholic church such as confession and communion; (4) receive visits from religious workers; (5) say the rosary with the aid of rosary pamphlets, which they are permitted to have in their cells.

### (3) *Impact of Accommodation*

The defendants introduced evidence that allowing plaintiffs to possess rosary beads and scapulars would create an impression of favoritism to Catholics and would lead to inmate requests for a variety of personal items on religious grounds. *Turner* instructs that where, as here, "accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner,* 482 U.S. at 90, 107 S.Ct. at 2262.

### (4) *Ready Alternatives*

The plaintiffs' proposed alternative—requiring prison officials to set up a system for inspecting rosary beads and scapulars to determine whether they conform to pre-set standards of construction and composition—is inadequate because it does not satisfy prison officials' concerns that allowing rosary beads and scapulars would create an impression of favoritism toward Roman Catholics and would lead to endless inmate requests for nonapproved personal items on religious grounds. *Cf. Standing Deer,* 831 F.2d at 1529 (rejecting Native American inmates' proposal that prison officials inspect religious headgear as alternative to ban on headgear on the ground that it did not answer prison officials' concern that allowing the headgear could create an appearance of favoritism and generate unrest).

Accordingly, we conclude that the prison regulation satisfies the *Turner* test and affirm the summary judgment.[1]

AFFIRMED.

---

**1.** We need not decide whether *Employment Div., Dept. of Human Resources v. Smith,* —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), lessens the government's burden under *Turner,* because appellants fail the *Turner* test.