Jack W. **FRIEND**, et al.,
Plaintiffs–Appellees,

v.

Ronald **KOLODZIECZAK**, et al.,
Defendants–Appellants.

No. 93–16918.

United States Court of Appeals,
Ninth Circuit.

Submitted * May 22, 1995.

Decided Sept. 19, 1995.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 21, 1995.

---

* The panel unanimously found this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Richard L. Reynolds, Bennett, Samuelsen, Reynolds & Allard, Oakland, California, for the defendants-appellants.

Amitai Schwartz, San Francisco, California, for the plaintiffs-appellees.

## AMENDED ORDER, DISSENT, AND DENIAL OF REHEARING

Appeal from the United States District Court for the Northern District of California.

Before: PREGERSON, FERGUSON, and O'SCANNLAIN, Circuit Judges.

Dissent by Judge FERGUSON.

### ORDER AMENDING ORDER

The Order, Appendix and Dissent filed September 19, 1995 is amended as follows:

With the above amendments, Judges Pregerson and O'Scannlain have voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc. Judge Ferguson votes to grant the petition for rehearing and recommends granting of rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed. R.App.P. 35(b).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

### ORDER

We affirm the district court's order on remand for the reasons stated in the district court's Memorandum and Order Re Attorney's Fees and Costs (On Remand), filed September 14, 1993, attached as Appendix A.

■ In affirming the district court's order on remand, we adopt its discussion and conclusion that plaintiffs are prevailing parties. A prevailing party analysis is a prerequisite for determining the reasonableness of an attorney's fee award; thus, our remand order assumed that the district court would conduct this analysis, which in fact it did.

The district court's discussion and conclusion in its order on remand comports with the Supreme Court's refinements to the prevailing party analysis in *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

### APPENDIX A

### United States District Court Northern District of California

JACK WAYNE FRIEND, et al., *Plaintiffs,*

v.

RONALD KOLODZIECZAK, et al., *Defendants.*

No. C 87–0161 MHP

#### MEMORANDUM AND ORDER RE ATTORNEYS' FEES AND COSTS (ON REMAND)

This case is back before this court on remand from the Supreme Court and the Ninth Circuit Court of Appeals for re-examination of the reasonableness of the attorneys' fees award in light of the Supreme Court's recent decision in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

Plaintiffs also seek fees and costs for time spent defending the fee award and seek interest on the fee award.

Having considered the submissions of the parties, the court re-affirms its original award, orders that plaintiffs be awarded fees and costs for time expended defending the fee award, and orders that all fee awards be paid with interest.

*BACKGROUND*

The facts of this case are treated in detail in this court's previous order of September 29, 1989. Briefly, plaintiffs, a class of all Roman Catholic inmates at Alameda County's North County Jail, brought this suit against county officials under the Civil Rights Act of 1864, 42 U.S.C. § 1983, seeking to secure access to Roman Catholic services and to possess certain sacramental articles (rosary beads and scapulars).

At hearings on cross-motions for summary judgment in October 1988 and March 1989, the parties indicated to the court that all issues regarding inmates' access to religious services had been resolved. Defendants further represented to the court that they were willing to allow inmates to possess rosaries and scapulars, but only under supervision. In September 1989, this court granted defendants' motion for summary judgment on the issue of whether jail officials were required to permit inmates access to rosaries and scapulars at all times, finding that unfettered and unsupervised possession of the sacramental articles was not constitutionally required. *Friend v. Kolodzieczak*, No. C–87–0161 (N.D.Cal. September 29, 1989). At the court's instruction, the defendants put in writing a policy regarding accommodation of inmates' religious needs.

Plaintiffs subsequently brought a motion for attorneys' fees and costs under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. On June 20, 1990, the court granted plaintiffs' motion, awarding $72,445.00 in fees and $6462.22 in out-of-pocket costs for the original litigation on the merits; the court furthered ruled that plaintiffs were entitled to fees and costs for time spent litigating the fee award. On July 10, 1990, the court fixed this latter amount at

$14,875.50. On July 18, 1990, the court issued an amended order consolidating the previous two orders.

Defendants appealed this court's award of fees to the Ninth Circuit, which affirmed. *Friend v. Kolodzieczak*, 965 F.2d 682 (9th Cir.1992). Defendants then appealed the Ninth Circuit ruling to the Supreme Court, which granted certiorari, vacated the judgment, and remanded the fee award to the Ninth Circuit for consideration in light of *Farrar*. *Kolodzieczak v. Friend*, 506 U.S. 1075, 113 S.Ct. 1038, 122 L.Ed.2d 348 (1993). The Ninth Circuit subsequently remanded to this court with instructions to "re-examine its determination of the reasonableness of the attorneys' fees award" in light of *Farrar*. *Friend v. Kolodzieczak*, 992 F.2d 243 (9th Cir.1993).

## LEGAL STANDARD

■ Under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, a court may award reasonable attorneys' fees to a prevailing party in a civil rights action. In the absence of special circumstances, a prevailing party should recover reasonable attorneys' fees. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986), *reh'g denied and opinion amended*, 808 F.2d 1373 (9th Cir.1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983)).

■ As an initial matter, a court must first determine whether or not the party seeking fees has "prevailed." In order to qualify as a prevailing party, a plaintiff must obtain some relief on the merits of his claim that materially alters the legal relationship between the parties. *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

■ Having determined that a civil rights plaintiff is a prevailing party, the court may award reasonable attorneys' fees. In determining the amount of the award, a court generally should begin by calculating the so-called "lodestar" amount, arrived at by multiplying the number of hours reasonably spent in achieving the results obtained by a reasonable hourly rate. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir.1992). A court may also consider other factors, including the degree of success obtained, and make adjustments to the lodestar accordingly. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975) (enumerating the factors that may be considered in adjusting the lodestar amount), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

## DISCUSSION

I. *Reasonableness of the Fee Award in Light of Farrar*

■ The Supreme Court in *Farrar* did not dramatically alter the law relevant to attorneys' fees awards; instead the Court refined its analysis of the fee award issue while in large part re-affirming its precedents. The *Farrar* decision does not undermine this court's original determination of what constitutes a reasonable fee award in this case.

In *Farrar*, the plaintiffs sued multiple defendants for $17 million but were ultimately awarded only one dollar in damages against a single defendant. *Farrar*, 506 U.S. at 105–07, 113 S.Ct. at 570. On the plaintiffs' motion for attorneys' fees under section 1988, the district court awarded over $300,000 in fees, costs, and interest. The Fifth Circuit reversed the fee award, holding that plaintiffs could not be considered prevailing parties, given the minimal recovery. *Estate of Farrar v Cain*, 941 F.2d 1311 (5th Cir.1991).

The Supreme Court affirmed the denial of fees. Although the Court held that the plaintiffs were in fact prevailing parties, *see* note 2 *infra*, the Court found that the plaintiffs were nonetheless not entitled to attorneys' fees, since the only reasonable fee award for such a hollow victory was no award at all.

In reaching this conclusion, the Court reiterated that a court must determine a reasonable fee award in light of the degree of success obtained in the action. *Id.* at 113–16, 113 S.Ct. at 574–75 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In certain circumstances, the minimal nature of the party's "success" will compel an award of no fee at all. *Id.* The Court held that in such a case a

court may by-pass the initial step of calculating the lodestar fee. The district court's error in *Farrar* was its award of substantial fees "without 'consider[ing] the relationship between the extent of success and the amount of the fee award.'" *Id.* at 115–16, 113 S.Ct. at 575 (citing *Hensley,* 461 U.S. at 438, 103 S.Ct. at 1942).

The plaintiffs in the instant case achieved far more than the type of "technical" or "de minimus" victory won by the plaintiffs in *Farrar,* and the fee award originally ordered is reasonable.[1] The plaintiffs here requested primarily injunctive relief and were for the most part successful in obtaining the relief that they requested. As this court stated in its original order, "[p]laintiffs achieved the right sought to expanded access to Roman Catholic services and sacraments, and gained explicit, written acknowledgment of the right to at least limited use of rosaries and scapulars." *Friend,* No. C–87–0161 (N.D.Cal. June 20, 1990), at 11. The changes accomplished were the result of the instigation of this lawsuit. This court found that these policies reflected changes in jail policy brought about by plaintiffs' suit and were not, as defendants claimed, pre-existing jail policies. *Id.* at 7. The record establishes that without this action defendants would not have developed the policy ultimately adopted in this case. This result was more than merely "technical"; it "materially alter[ed] the legal relationship between the parties" in a manner that was meaningful and substan-

tial. *Farrar,* 506 U.S. at 113–14, 113 S.Ct. at 574.

In making its determination of reasonable fees, this court relied on the same precedent that is re-affirmed in *Farrar.* Specifically, this court noted that *Hensley* dictates that a court consider the overall results achieved by plaintiffs. *See Friend,* No. C–87–0161 (N.D.Cal. June 20, 1990), at 11. Although this court noted in its original ruling that it had granted defendants' motion for summary judgment on the issue of whether jail officials were required to permit inmates unlimited access to rosaries and scapulars at all times, it found then, and reaffirms now, that plaintiffs nonetheless prevailed on a significant portion of the relief sought. After assessing the degree of success achieved by the plaintiffs, this court found that plaintiffs were entitled to recover the fees they requested, equal to 85% of the lodestar amount. *Id.*[2]

The fact that plaintiffs received no monetary relief is of no import, since, unlike the *Farrar* plaintiffs, the primary goal of the plaintiffs in this case was to obtain injunctive relief. *See Pembroke v. Wood County,* 981 F.2d 225, 231 n. 27 (5th Cir.) (distinguishing *Farrar* on this ground), *cert. denied,* — U.S. ——, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993). Nor is it relevant that plaintiffs obtained the relief they sought through settlement rather than a judgment in their favor. The Supreme Court in *Farrar* reaffirmed the principle relied on by this court in its original fee

---

1. The issue of whether or not plaintiffs are "prevailing parties" is not before this court on remand; the Ninth Circuit order instructed this court to re-examine only the reasonableness of the award. *Friend,* 992 F.2d at 243.

   At any rate, *Farrar* clearly does not affect this court's original determination, affirmed by the Ninth Circuit, that plaintiffs prevailed in this case. In fact, the *Farrar* Court's refinements to the prevailing party analysis make it *easier* for parties to meet this threshold requirement, if anything. In reversing the Fifth Circuit's finding that the plaintiffs were not "prevailing parties," the *Farrar* Court reiterated that a party has prevailed "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar,* 506 U.S. at 111–12, 113 S.Ct. at 573 (citing, *inter alia, Texas State Teachers,* 489 U.S. at 792–93, 109 S.Ct. at 1493–94). The

   Court held that even a plaintiff who is awarded only nominal relief is a "prevailing party" under this definition. *Farrar,* 506 U.S. at 111–13, 113 S.Ct. at 573.

   In the instant case, as pointed out in this court's original order and as detailed below, plaintiffs achieved substantially all of the results they originally sought in a way that clearly altered the legal relationship between the parties. *See Friend,* No. C–87–0161 (N.D.Cal. June 20, 1990), at 6 (citing, *inter alia, Texas State Teachers,* 489 U.S. at 792–93, 109 S.Ct. at 1493–94).

2. The Ninth Circuit, in affirming this court's fee award, also noted the extent of plaintiffs' success. *See Friend,* 965 F.2d at 684–85. Although the Ninth Circuit's discussion of plaintiffs' success was in the context of analyzing whether plaintiffs qualified as "prevailing parties," as opposed to whether the award was reasonable, the two prongs of the fee award analysis are clearly related.

award that fees may be awarded due to relief obtained through a settlement or consent decree. *Farrar*, 506 U.S. at 111, 113 S.Ct. at 573 (citing *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)).

In short, there is nothing in *Farrar* that affects this court's original analysis of the reasonableness of the attorneys' fees in this case. Plaintiffs' victory in this case was no pyrrhic victory, as in *Farrar*, but rather was substantial and significant. Thus *Farrar* and the precedents on which it relies dictate that this court follow the "lodestar" method of calculating a reasonable fee award that it did in the first instance, with due consideration given to the degree of success obtained by the prevailing party.[3]

II. *Plaintiffs' Entitlement to Fees For Hours Expended Defending The Award of Attorneys' Fees*

■ Plaintiffs are entitled to compensation for all time reasonably spent defending this court's original orders awarding fees and costs, including time spent unsuccessfully opposing defendants' petition to the Supreme Court for a writ of certiorari. *See Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052–53 (9th Cir.1991). The fact that plaintiffs lost one battle along their road to ulti-

mate victory does not deprive them of their entitlement to fees and costs for that setback. *Id.*[4]

Plaintiffs have already been awarded fees and costs through the time of the court of appeals ruling on the fee issue. Plaintiffs now claim a lodestar amount of $17,005.00 for time spent litigating the fee award between the time of the court of appeal's ruling and July 9, 1993.[5] Plaintiffs also seek $779.58 in expenses for this time period. *See* Schwartz Dec. at 4; Supp.Schwartz Dec. at 2. Defendants contest this amount and contend that plaintiffs' documentation is inadequate. The court finds that given the total hours expended in this case, plaintiffs' documentation is sufficiently specific to justify an award of fees, and that the number of hours claimed is reasonable for the tasks described. Plaintiffs are therefore entitled to fees and costs in the amounts requested.

III. *Post–Judgment Interest*

■ Pursuant to 28 U.S.C. § 1961(a), plaintiffs are entitled to post-judgment interest on judgments "from the date of the entry of the judgment." The statute applies to awards of attorneys' fees and costs under section 1988. *Spain v. Mountanos*, 690 F.2d 742, 747–48 (9th Cir.1982).[6] Interest runs

---

3. The court declines defendants' invitation to view this remand as an opportunity for a full-scale re-assessment of the court's initial fee award, including such matters (not raised by defendants at the time of the initial fee award) as whether plaintiffs' attorneys spent too much time on this litigation or exaggerated their hours. This court has already determined in its original orders that plaintiffs' attorneys have submitted sufficiently detailed records to substantiate the number of hours claimed. The court's mission on remand is to re-examine its ruling in light of

| | | | | |
|---|---|---|---|---|
| Amitai Schwartz | 51.0 hrs. | × $275/hr. | = | $14,025.00 |
| Sue Ochs | 2.5 hrs. | × $175/hr. | = | $ 437.50 |
| Dennis Farias | 8.9 hrs. | × $150/hr. | = | $ 1,335.00 |
| Antonio Ponvert III | 4.0 hrs. | × $130/hr. | = | $ 520.00 |

*See* Schwartz Dec. at 3 (reflecting time spent through June 18, 1993). Mr. Schwartz spent an additional 2.5 hours (equalling $687.50 at the rate of $275 per hour) in reviewing defendants' opposition to this motion and preparing a reply. *See* Supp.Schwartz Dec. at 1–2.

Plaintiffs' attorneys have increased slightly the hourly rate claimed from the rates accepted by this court in the original fees motion in 1990. *See Friend*, C–87–0161 (N.D.Cal. June 20, 1990),

*Farrar*, not in light of any new or previously litigated claim that defendants wish to raise.

4. Contrary to defendants' assertion, plaintiffs have not requested fees for their appeal of this court's summary judgment ruling regarding inmates' unsupervised possession of rosaries and scapulars, a claim on which plaintiffs ultimately were unsuccessful.

5. Plaintiffs calculate this figure based on the following formula:

at n. 3 (reflecting a rate of $235 per hour for Mr. Schwartz and $140 per hour for Ms. Ochs). Defendants have not disputed this increase in rates and the court finds the increase reasonable in view of inflation and rising cost of legal services over the past three years.

6. Although *Spain* addresses only the issue of interest on fees, it follows that costs, as part of the same judgment, are also covered by the post-

from the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set. *Finkelstein v. Bergna,* 804 F.Supp. 1235, 1239–40 (N.D.Cal. 1992); *see also Perkins v. Standard Oil Co.,* 487 F.2d 672, 674–76 (9th Cir.1973) (post-judgment interest runs from date attorneys' fees are first awarded even though the fee award is later reduced on appeal).

On June 20, 1990, this court entered an order for $72,445.00 in attorneys' fees, plus costs in the amount of $6,462.22, related to plaintiffs' litigation on the merits. In the same order, the court awarded plaintiffs their fees and costs related to the fee award litigation. Although the exact amount of this latter award was not fixed until July 10, 1990, interest on this award, as on the original award, runs from June 20, 1990, the date on which the entitlement to fees was secured. Plaintiffs state, and defendants do not dispute, that the rate of interest under 28 U.S.C. § 1961 on that date was 8.09 percent. Plaintiffs will therefore be awarded interest at this rate.

The court of appeals has previously awarded plaintiffs $17,244.17 for time spent defending this court's fee award through September 17, 1992 (the date on which the Ninth Circuit affirmed the fee award). Plaintiffs are entitled to interest on this amount from the date of that award on September 17, 1992. 28 U.S.C. § 1961; *Finkelstein,* 804 F.Supp. at 1239–40. Plaintiffs state, and defendants do not dispute, that the interest rate under 28 U.S.C. § 1961 on that date was 3.13 percent; accordingly, this court will order interest to be paid at this rate.

*CONCLUSION*

For the foregoing reasons, the court reaffirms its previous orders and HEREBY ORDERS:

1) that defendants pay the sum of $72,445.00 to plaintiffs as compensation for services rendered in connection with the original litigation;

2) that defendants pay the sum of $6,462.22 to plaintiffs as compensation for costs in the original litigation; and

3) that defendants pay the sum of $14,875.50 to plaintiffs as compensation for services rendered in connection with the fee litigation.

IT IS FURTHER ORDERED:

4) that the foregoing amounts be paid with interest at the rate of 8.09 percent from June 20, 1990;

5) that the amount awarded in fees by the Ninth Circuit ($17,244.17) be paid with interest, at the rate of 3.13 percent from September 17, 1992;

6) that the defendants pay the sum of $17,005.00 to plaintiffs in compensation for services rendered in connection with the defense of the fee award from September 17, 1992 through July 9, 1993; and

7) that defendants pay the sum of $779.58 to plaintiffs for costs incurred in defense of the fee award from September 17, 1992 through July 9, 1993.

IT IS SO ORDERED.

Dated: SEP 14 1993

FERGUSON, Circuit Judge, dissenting:

The majority, in affirming the district court's award of attorneys' fees in this case, has created an unexplained conflict with our case of *Bryant v. Gomez,* 46 F.3d 948 (9th Cir.1995), by implicitly granting rights to Roman Catholics which are denied to other religious denominations. It must be understood that at no time during the course of this litigation has any authority of the Catholic Church maintained that the defendants deprived inmates of access to any tenet or belief mandated by the Catholic Church. Here, despite the fact that the legal relationship between the parties was not materially altered by the settlement of the case and despite the fact that the inmates did not win any right to Catholic denominated services or to unsupervised access to rosary beads or scapulars, the district court found that the plaintiffs were "prevailing parties" in their 42 U.S.C. § 1983 suit against the jail. As a

judgment interest statute. *See R.W.T. v. Dalton,* 712 F.2d 1225, 1234–35 (8th Cir.) (awarding interest on both fees and costs), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

result of the district court's holding and the majority's order, the taxpayers of Alameda County will now be forced to pay thousands of dollars in attorneys' fees for a civil rights case in which no civil rights were violated; therefore, I dissent.

## I. Background

The case underlying the award of fees is a 42 U.S.C. § 1983 class action brought by a group of Alameda North County Jail's ("the jail's") Roman Catholic inmates. The inmates alleged that the jail violated their rights: (i) to participate in Catholic religious services performed by a priest and (ii) to possess rosary beads and scapulars in their cells. At the original hearing on cross-motions for summary judgment, the parties agreed that all of the issues concerned with access to Catholic religious services had been resolved. The remaining issue, the inmates' right to possess rosary beads and scapulars in their cells, was resolved when this court affirmed the district court's determination that the jail had legitimate security reasons for restricting inmates' private access to rosary beads and scapulars. *Friend v. Kolodzieczak,* 923 F.2d 126, 128 (9th Cir.1991).

At the close of the original litigation, the inmates brought a motion for attorneys' fees and costs under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. The district court awarded attorneys' fees and this court affirmed the award. *Friend v. Kolodzieczak,* 965 F.2d 682, 686 (9th Cir. 1992) (Ferguson, J., dissenting), *vacated,* 506 U.S. 1075, 113 S.Ct. 1038, 122 L.Ed.2d 348 (1993). Defendants appealed the award to the Supreme Court, which granted certiorari, vacated the judgment, and remanded for reconsideration in light of *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). This court, in turn, remanded the case to the district court. *Friend v. Kolodzieczak,* 992 F.2d 243 (9th Cir.1993).

On remand, the district court reaffirmed its original grant of fees and also awarded fees and costs for the time expended in defending the award on appeal. *Friend v. Kolodzieczak,* No. CV–87–0161–MHP, 1993 WL 372252 (N.D.Cal. Sept. 14, 1993). The major-

ity has upheld the award and I must again dissent based on the fact that the plaintiffs were not "prevailing parties." The defendants in this case settled neither in recognition of nor in response to the plaintiffs' rights, but rather, in furtherance of reasonable penological goals—peace and quiet among the inmate population.

In addition to its unexplained conflict with prior cases in the Circuit, the majority has failed to follow the mandate of the Supreme Court. The Supreme Court mandated "further consideration in light of *Farrar v. Hobby,*" and the panel directed the district court to reexamine its determination of the reasonableness of the attorneys' fees award in light of the *Farrar v. Hobby* decision. The Supreme Court remand was a directive to reconsider the prevailing party analysis in order to determine whether attorney fees should have been awarded in the first place. The district court interpreted the panel order as follows: "The issue of whether or not the plaintiffs are 'prevailing parties' is not before this court on remand; the Ninth Circuit order instructed this court to reexamine only the reasonableness of the award." Op. at 1390 n. 1. That holding is contrary to the mandate of the Supreme Court. It must be repeated that in this case the only judicial orders on the merits were a district court dismissal of plaintiffs' case and a decision by another panel of this court affirming the dismissal.

## II. Discussion

In affirming the district court for the reasons stated in the court's opinion, the majority finds that the inmates qualify as a "prevailing party" and therefore are entitled to an award of attorneys' fees. A "prevailing party" is one who succeeds "on any significant issue in litigation" and achieves a resolution which "changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989). When no formal relief is granted, a plaintiff may nevertheless be a "prevailing party" if the lawsuit provides the catalyst for constitutional reform by the government. *Sablan v.*

*Dep't of Fin. of Com. of N. Mariana Islands,* 856 F.2d 1317, 1325 (9th Cir.1988). The Supreme Court held in *Farrar* that "judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party." *Farrar,* 506 U.S. at 112, 113 S.Ct. at 573. In the case at hand, the jail's Roman Catholic inmates won neither an enforceable judgment against the defendants, a "judicial pronouncement that the defendants had violated the Constitution," nor a change in the legal relationship between themselves and the jail.

The record establishes that the jail provided interdenominational Christian services for the inmates on Sunday mornings. A Catholic Charities lay minister, approved by the Bishop of Oakland, regularly participated in the interdenominational services with Protestant lay ministers and individually administered to the inmates during visiting hours. The lay minister brought holy communion to the inmates, taught with Roman Catholic texts and study guides, and arranged for the sacrament of confession with a priest upon an inmate's request. The inmates were also allowed to use rosary beads and scapulars during services or under other supervised conditions.

The record demonstrates that the Catholic lay minister was causing dissension in the jail by his attempts to convert prisoners of other religions to Catholicism. As a result of the heightened tensions between himself and the protestant group involved in the interdenominational worship services in the fall of 1987, the Catholic lay minister attempted to get approval for independent, Catholic-denominated services. Following the lay minister's failed effort to secure independent Catholic services, he terminated his ministry at the jail. As a result, the Catholic inmates at the jail experienced a period of time in which no Catholic minister, lay or otherwise, was available. The absence was not however, due to any negligence or restrictive intent on the part of the jail.

As soon as the disgruntled minister left his ministry, jail officials approached Catholic Charities for a replacement minister. It was during this period that the inmates brought suit against the jail seeking independent Catholic-denominated services and the right to use rosary beads and scapulars unsupervised in their cells. The jail settled the religious services case to prevent the jail from becoming another Northern Ireland or Bosnia. There was no restraint of religious rights to the plaintiffs because they were never without access to interdenominational services which were approved by the Roman Catholic Bishop of Oakland. It must be repeated that at no time during this litigation has the proper authority of the Catholic Church ever stated that the policies of the jail prevented inmates from having a religious experience mandated by the Catholic faith. *See Graham v. C.I.R.,* 822 F.2d 844, 850–51 (9th Cir.1987), *aff'd sub nom. Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1988).

Under *Sablan,* we must follow a two part test to determine whether or not the inmates qualify as a "prevailing party." First, we must determine whether the lawsuit resulted in the relief obtained. *Sablan,* 856 F.2d at 1325. It is clear that the county did not settle the religious services portion of this case to grant the inmates their religious rights; the inmates were never deprived of their right to religious services. *See Bryant,* 46 F.3d at 949 (holding that under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb–2000bb–4, an inmate's 42 U.S.C. § 1983 challenge to a prison's restrictions on full religious services must meet the "substantial burden" test to be actionable). In addition, the district court held and this court affirmed that the inmates suffered no loss of rights as a result of the jail's refusal to allow the private possession of religious articles. *Friend,* 923 F.2d at 128. Thus, the inmates suffered no violation of their rights, but for the legitimate purpose of prison security.

The second prong of the *Sablan* test looks to whether there is a legal basis for the plaintiff's claim. *Sablan,* 856 F.2d at 1325. It is undisputed that the interdenominational services were approved by the authorized leaders of the Catholic Church and they provided the religious rights to which the plain-

tiffs were entitled. *See Bryant,* 46 F.3d at 949–50. Neither the priests nor the prison deprived inmates of any right. Limited access to a Catholic priest is increasingly common throughout dioceses across the country as "[d]eclining numbers of U.S. Catholic priests have created a shortage in key religious services." Richard A. Schoenherr & Lawrence A. Young, *Full Pews and Empty Altars: Demographics of the Priest Shortage in the United States Catholic Dioceses* 307 (1993). Throughout the U.S. Catholic Church lay leadership is gaining greater and greater legitimacy both as a result of the Second Vatican Council's emphasis on lay participation in church ministry and as a result of the expanding parishioner-to-priest ratios. *Id.* at 354, 342. In light of such facts, it is absurd for courts to hold that Catholic prisoners have a greater right to access to a priest than parishioners do.

Following *Farrar,* this court recently held that "to qualify as a prevailing party, a civil rights plaintiff 'must obtain an enforceable judgment against the defendant from whom fees are sought.'" *Wilcox v. City of Reno,* 42 F.3d 550, 554 (9th Cir.1994) (quoting *Farrar,* 506 U.S. at 111, 113 S.Ct. at 573). The majority, in affirming the district court, reasons that the inmates are a "prevailing party" because the jail, in response to a court order, provided the inmates with a written statement of the jail's policy regarding the possession of religious items. However, the existence of a written policy does not prove that the plaintiffs were victorious. No proof was offered to show that the prison *changed* its policy as a result of the plaintiffs' suit. In light of the fact that this court has consistently held that: (i) prisoners do not have an unfettered right to individual, denomination-specific services, and that (ii) the jail has the right to restrict access to religious objects, I find it impossible to conclude that the plaintiffs were the "prevailing party" in this suit.

By concluding that the inmates were a "prevailing party," the district court and the majority has granted, in violation of the First Amendment, an alleged civil right to Catholics which in this Circuit does not extend to Protestants. *See Bryant,* 46 F.3d at 949. In *Bryant,* we held that prison officials were not required to provide full religious Pentecostal services to inmates because there was no evidence that the services which the inmates requested were mandated by the Pentecostal faith. The *Bryant* court relies on *Graham* for the rule that:

> the religious adherent ... has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion ... by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

*Graham,* 822 F.2d at 850–51. In this case the record is clear that the Catholic Bishop specifically approved interdenominational services with Protestants to take the place of the traditional Mass because of the lack of Catholic priests. Without any explanation whatsoever, the majority implies that that is not good enough for Catholics, but that it is good enough for other religious denominations. The failure of the district court and the majority to realize that by finding the plaintiffs to be "prevailing parties" it has granted rights to Catholics that it does not grant to other religious denominations is remarkable and dangerous.

The facts of this case remain uncontested. A group of inmates brought an action to enforce religious rights which they were never denied. As the Supreme Court reaffirmed in *Farrar,* fee awards under § 1988 should be based on the amount of success achieved by the plaintiffs and not provide windfalls to attorneys. *Farrar,* 506 U.S. at 114–16, 113 S.Ct. at 575. The plaintiffs in this case could not and did not achieve any success as their rights were never violated. Any award of attorneys' fees is inappropriate.