141 F.3d 1173
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dr. Rodolfo ACUNA, Plaintiff-Appellant,
v.
REGENTS OF THE UNIVERSITY OF CALIFORNIA; University of
California at Santa Barbara; John Doe, 1-4, Members of the
Secret Ad Hoc Committee & Others In Their Individual &
Official Capacities; Wallace Chafe; Raymond Huerta;
Unknown Ad Hoc Committee Member One Unknown Ad Hoc Committee
Member Two Unknown Reviewer One; Unknown Reviewer Two;
Unknown Reviewer Three; Unknown Reviewer Four; Unknown
Reviewer Six; Unknown Reviewer Seven; Unknown Reviewer
Eight; Unknown Reviewer Nine; Unknown Reviewer Ten;
Unknown Reviewer Eleven; Unknown Reviewer Twelve; Unknown
Reviewer Thirteen; Unknown Reviewer Fourteen; Unknown
Reviewer Fifteen, inclusive, in their official capacities,
Defendants-Appellees.
 No. 96-56562.
D.C. No. CV-93-01548-ABC.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted February 5, 1998 Pasadena, California.
Decided April 1, 1998.
 
 Appeal from the United States District Court for the Central District of California, Audrey B. Collins, District Judge, Presiding.
 Before PREGERSON, BEEZER, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We affirm, in part, and reverse, in part, the district court's August 28, 1996 order awarding Plaintiff Dr. Acuna attorney's fees and costs. We also affirm the district court's order awarding post-judgment interest on attorney's fees from the date the judgment on attorney's fees was entered, September 3, 1996.
 
 DISCUSSION
 I. Attorney's Fee Award
 
 3
 A prevailing party in an Age Discrimination in Employment Act (ADEA) case is entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). At trial before a jury, Plaintiff Dr. Acuna succeeded on his ADEA claim. The jury found that the Defendants had discriminated against Plaintiff because of his age. The district court then determined that Plaintiff was a "prevailing party" under Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and that he was entitled to attorney's fees and expenses.[1] The parties do not dispute this ruling.
 
 A. Reasonable Fee
 
 4
 Plaintiff, as the prevailing party, timely moved for attorney's fees and expenses in the amount of $2,490,672.62. The district court reduced Plaintiff's fee application by 80 percent and awarded the Plaintiff $500,000 in attorney's fees and $1,960.06 for litigation expenses. In arriving at the 80 percent figure, the district court reduced Plaintiff's initial fee request by 15 percent for overstaffing and an additional 15 percent for time record inaccuracies. Plaintiff does not dispute these reductions. The district court also reduced Plaintiff's initial fee request by 50 percent because he failed to prevail on his race and national origin discrimination claims under Title VII; because he failed to obtain emotional distress, punitive damages, and liquidated damages; and because he was denied instatement at the University of California at Santa Barbara (UCSB).[2] Plaintiff argues that the 50 percent reduction for limited success was unwarranted because his unsuccessful race and national origin discrimination claims under Title VII were related to his successful ADEA claim and because he obtained "substantial relief."
 
 
 5
 We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. Generally, we review a district court's fee award under the abuse of discretion standard. See Bouman v. Block, 940 F.2d 1211, 1235 (9th Cir.), cert. denied, 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991). We review de novo, however, "any elements of legal analysis and statutory interpretation which figure in the district court's award." Haworth v. State of Nev., 56 F.3d 1048, 1050 (9th Cir.1995).
 
 1. Accounting for Partial Success
 
 6
 A reasonable attorney's fee award is determined in two steps. First, the court determines a lodestar amount by multiplying the number of hours reasonably expended on the litigation[3] by a reasonable hourly rate. See Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir.1988) (citing Hensley, 461 U.S. at 433), cert. denied, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). Second, the court determines, whether the lodestar amount must be adjusted to accurately reflect a reasonable fee. There is a strong presumption that the lodestar figure is a reasonable fee. See Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir.1992). The presumptively reasonable lodestar figure may be adjusted downward or upward only on the basis of those factors not already subsumed in the lodestar calculation. See Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir.1996), amended on other grounds, 108 F.3d 981 (1997).
 
 
 7
 In determining a reasonable fee, a district court is required to consider the "results obtained." Hensley, 461 U.S. at 434. The Supreme Court set forth a two-step inquiry to be followed when determining whether some reduction in the lodestar is necessary to account for a plaintiff's partial success. Id. First, the district court must identify unsuccessful claims that are wholly unrelated to the successful claims and then exclude the hours spent on unsuccessful claims from the fee application. See Hensley 461 U.S. at 434-435. Second, if the unsuccessful and successful claims are related, then the court must evaluate the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. See Thorne v. City of El Segundo, 802 F.2d 111, 141 (9th Cir.1986) (citing Hensley, 461 U.S. at 434-435).
 
 
 8
 a. Relatedness of Title VII & ADEA Claims
 
 
 9
 The district court reduced Plaintiff's initial fee request by an additional 50 percent because the court concluded that Plaintiff's race/national origin discrimination claims were unrelated to his ADEA claim. Plaintiff asserts that the district court abused its discretion in finding that his unsuccessful race and national origin discrimination claims under Title VII were unrelated to his successful ADEA claim. Plaintiff contends that all except one of the elements necessary to prove Title VII and ADEA claims overlap.[4] Plaintiff states that for this reason his claims are related, rather than "distinctly different."
 
 
 10
 Despite these shared elements, Plaintiff's race/national origin and age discrimination claims did not arise from the same events or the same course of conduct. It was within the district court's discretion to find that Plaintiff's Title VII claims were based on distinctly different facts and legal theories from his successful ADEA claim. Accordingly, the district court did not err in concluding that Plaintiff's unsuccessful Title VII claims were not related to his successful ADEA claim.
 
 
 11
 b. Results Obtained
 
 
 12
 Plaintiff also contends that regardless of whether the race/national origin and age discrimination claims were related the 50 percent reduction was unwarranted because he ultimately obtained "substantial relief" from the jury. Specifically, Plaintiff argues that the remedies available under Title VII and the ADEA are identical. In other words, Plaintiff believes that he would have gained nothing more had he also prevailed on his Title VII claims.
 
 
 13
 In reducing the initial fee request, the district court considered both the unrelatedness of the claims and Plaintiff's limited success on the age discrimination claim. Plaintiff ultimately obtained full compensatory damages in the amount of $326,800 in "backpay" and "frontpay." Plaintiff asserts that this award of compensatory damages for his ADEA claim constitutes "excellent results" which entitle him to full compensation. See Thorne, 802 F.2d at 141. Contrary to Plaintiff's assertion, however, the award of compensatory damages for plaintiff's successful ADEA claim does not completely offset the fact that he lost on his Title VII claim. Accordingly, although Plaintiff achieved a significant victory, the district court did not abuse its discretion in reducing the fee application by 50 percent to account for Plaintiff's partial success.
 
 2. Fees Calculation
 
 14
 The district court, however, erred in computing the fee award. As stated above, the district court determined Plaintiff's fee award by reducing his requested fee by 80 percent. The district court arrived at this percentage by adding the 15 percent reduction for overstaffing, the 15 percent reduction for inaccurate time records, and the 50 percent reduction for results obtained. Plaintiff argues that the district court mistakenly computed the fees under Hensley .
 
 
 15
 Plaintiff is correct. A district court in assessing a reasonable fee should determine the lodestar by reducing the number of hours reasonably expended in the litigation, or by reducing the requested hourly rate, or both. Here, the district court did not identify and exclude specific hours from the initial fee request. Where as here, a district court does not reduce the number of hours requested in the fee application to account for limited success, in the alternative a court may reduce the lodestar by a certain percentage to account for limited success. See Cabrales v. County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir.1988), cert. granted, judgment vacated on other grounds, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 (1989), opinion reinstated by, 886 F.2d 25 (9th Cir.1988), cert. denied, 494 U .S. 1091.
 
 
 16
 Here, the district court erred by not calculating a lodestar. Cf. Harris v. Marhoefer, 24 F.3d 16, 18 (9th Cir.1994) ("Calculating the lodestar figure is the starting point for determining a reasonable fee."). Instead, the court simply reduced the initial fee request (not the lodestar) by 80 percent. This method of calculating the fee award is incorrect because it failed to determine the lodestar by excluding from the initial fee request hours attributed to overstaffing and poor record keeping. The district court computed Plaintiff's fee award as follows:
 
 
 17
 $2,500,000
- 2,000,000 (representing 80% reduction of fee request to account for
 overstaffing, inaccurate time records, and limited results
 obtained)
 
 
 18
 The district court's calculation results in a significant mathematical discrepancy from the amount of fees that would have been awarded had the district court employed the proper approach in determining the lodestar. Under the proper approach, the computation would be as follows:
 
 
 19
 $2,500,000 Initial Fee Request
 - 750,000 (representing 30% reduction for overstaffing and inaccurate
 records)
$1,750,000 Lodestar
 - 875,000 (representing 50% reduction for limited results obtained)
 
 
 20
 Thus, proper calculation of the fee award required the court first to reduce the fee request for overstaffing and inaccurate records to determine the lodestar because these problems pervade the entire fee application. Once this lodestar figure is calculated, the district court reduces the lodestar to reflect the results obtained if, as here, the number of hours spent on unrelated and unsuccessful claims is unclear. Cabrales, 864 F.2d at 1464.
 
 
 21
 Here, the district court determined that a reasonable fee for the entire litigation required it to reduce the initial fee request by 30 percent to account for overstaffing and inaccurate time records. Adopting this determination, the resulting figure of $1,750,000 represents a reasonable lodestar. The district court, however, thought it necessary to reduce the initial fee request by an additional 50 percent to account for the Plaintiff's limited success. The problem with the district court's math is that the identified percentage reductions (15 percent for overstaffing, 15 percent for inaccurate time records, and 50 percent for limited success) were lumped together and the initial fee request was reduced by 80 percent. This lumping-together approach inaccurately applies the district court's identified reductions. The following example illustrates the inaccuracy of the lumping together approach: Let us assume that the district court had thought it should deduct 50 percent for overstaffing and inaccurate time records and 50 percent for limited success. Under the lumping together approach the amount requested in the initial fee application would be reduced by 100 percent, and a prevailing plaintiff would be left with a fee award of zero.
 
 
 22
 The district court clearly erred in reducing the initial fee request by 80 percent. Based on the court's identified reductions, which we accept, (15 percent for inaccurate records, 15 percent for overstaffing, and 50 percent for limited success) as shown above, the proper calculation of the fee award should be $875,000, not $500,000.
 
 II. Post-Judgment Interest
 
 23
 The district court awarded post-judgment interest on Plaintiff's attorney's fee award pursuant to 28 U.S.C. § 1961(a). On appeal, the parties dispute the date on which post-judgment interest should commence--the date on which the judgment was entered on the jury's verdict or the date on which the judgment on attorney's fees was entered. We affirm the district court's award of post-judgment interest, which calculated the interest from September 3, 1996, the date on which judgment was entered on the fee award. See Perkins v.. Standard Oil Co., 487 F.2d 672, 675 (9th Cir.1973); Friend v. Kolodzieczak, 72 F.3d 1386, 1392 (9th Cir.1995), cert. denied 516 U.S. 1146, 116 S.Ct. 1016, 134 L.Ed.2d 96 (1996).
 
 III. Fees on Appeal
 
 24
 Plaintiff and Defendants seek attorney's fees for work performed on this appeal. We conclude that the parties shall bear their own fees and costs for this appeal.
 
 CONCLUSION
 
 25
 The district court did not abuse its discretion in determining that a 50 percent reduction was warranted to account for limited success. The district court, however, erred in not first determining the lodestar by reducing the initial amount requested in the fee application by 30 percent and then reducing the resultant lodestar amount by 50 percent for limited success. As shown above, properly calculated, the fee award should be $875,000. Furthermore, the district court did not err in determining post-judgment interest from the date judgment on the attorney's fee award was entered. Finally, we determine that each party shall bear its own costs on appeal.
 
 
 26
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Hensley, the U.S. Supreme Court addressed the issue of reasonable attorney's fees under 42 U.S.C. § 1988. Section 1988 is substantially identical to the fee-shifting provisions under the ADEA
 
 
 [2]
 Instatement in this action would require UCSB to extend Plaintiff the tenured faculty position that it denied him initially
 
 
 [3]
 A district court is required to assess the reasonableness of the hours expended in light of the relevant factors identified in Kerr v. Screen Extras Guild, 526 F.2d 67 (9th Cir.1975)
 
 
 [4]
 Under either theory, Plaintiff had to prove that he was a member of a protected class (age or race/national origin); that he had applied for and was qualified for the position; that he was denied the position; and that the position remained open. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (setting forth four-part test to determine whether plaintiff established a presumption of discrimination)