**Fred GRAVES, Isaac Popoca, on their own behalf and on behalf of a class of all pretrial detainees in the Maricopa County Jails, Plaintiffs,**

v.

**Joseph ARPAIO, Sheriff of Maricopa County; Fulton Brock, Don Stapley, Andrew Kunasek, Max W. Wilson, and Mary Rose Wilcox, Maricopa County Supervisors, Defendants.**

No. CV–77–0479–PHX–NVW.

United States District Court,
D. Arizona.

April 20, 2009.

Supplemental Order Awarding Attorney's Fees July 2, 2009.

Debra Ann Hill, Larry A. Hammond, Sharad H. Desai, Osborn Maledon PA, Daniel Joseph Pochoda, ACLU, Phoenix, AZ, Hanh Nguyen, Margaret Winter, ACLU, National Prison Project, Washington, DC, Theodore C. Jarvi, Law Offices of Theodore Jarvi, Tempe, AZ, for Plaintiffs.

Adam S. Polson, Dennis Ira Wilenchik, Thomas E. Lordan, Wilenchik & Bartness PC, Michele Marie Iafrate, Courtney Rachel Cloman, Iafrate & Associates, Phoenix, AZ, for Defendants.

## ORDER

NEIL V. WAKE, District Judge.

Pending before the Court is Plaintiffs' Motion for Attorneys' Fees and Nontaxable Costs. (Doc. # 1640.)

## I. Background

In 1977 this class action was brought against the Maricopa County Sheriff and the Maricopa County Board of Supervisors alleging that the civil rights of pretrial detainees held in the Maricopa County, Arizona, jail system had been violated. (Doc. # 1.) In 1981 the parties entered into a consent decree that addressed and regulated aspects of County jail operations as they applied to pretrial detainees. (Doc. # 166.)

In 1995 the initial consent decree was superseded by an Amended Judgment entered by stipulation of the parties. (Doc. # 705.) The Amended Judgment provided relief regarding the following: population/housing limitations, dayroom access, natural light and windows, artificial lighting, temperature, noise, access to reading

materials, access to religious services, mail, telephone privileges, clothes and towels, sanitation, safety, hygiene, toilet facilities, access to law library, medical care, dental care, psychiatric care, intake areas, mechanical restraints, segregation, outdoor recreation, inmate classification, visitation, food, visual observation by detention officers, training and screening of staff members, facilities for the handicapped, disciplinary policy and procedures, inmate grievance policy and procedures, reports and record keeping, security override, and dispute resolution.

In 1998 Defendants filed a motion to terminate the Amended Judgment pursuant to the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626 and 42 U.S.C. § 1997e. (Doc. # 755.) Judge Earl H. Carroll denied the motion to terminate, relying on *Taylor v. United States,* 143 F.3d 1178 (9th Cir.1998), which held the decree termination provisions of the PLRA to be unconstitutional. (Doc. # 774.) Defendants appealed from the denial of their motion for termination. (Doc. # 777.) The *Taylor* panel opinion subsequently was withdrawn.

On January 25, 2001, 2 Fed.Appx. 867 (9th Cir.2001), the Ninth Circuit issued a memorandum decision reviewing the denial of Defendants' motion to terminate the Amended Judgment. (Doc. # 799.) Acknowledging that *Gilmore v. California,* 220 F.3d 987 (9th Cir.2000), held the PLRA decree termination provision constitutional and controlled the appeal, it reversed and remanded for proceedings consistent with *Gilmore.* (Doc. # 799.)

On September 25, 2001, Defendants renewed their motion to terminate. (Doc. # 821). On September 12, 2002, Judge Carroll denied Defendants' renewed motion to terminate without prejudice subject to findings to be entered following an evidentiary hearing. (Doc. # 840.) On November 14, 2003, Defendants filed a pre-hearing memorandum in support of a renewed motion to terminate, which operated as a second renewed motion to terminate the Amended Judgment. (Doc. # 906.)

On November 25, 2003, and January 22, 2004, Judge Carroll began hearing evidence on Defendants' motion. (Doc. ## 918, 939.) The parties engaged in further discovery, but the hearing was not completed. On April 3, 2008, Judge Carroll caused the case to be reassigned, and it subsequently was assigned to the undersigned judge. (Doc. ## 1222, 1234.) On April 25, 2008, 2008 WL 2008966, this Court set Defendants' motion to terminate the Amended Judgment for evidentiary hearing commencing August 12, 2008. (Doc. # 1241.) Evidence was received and argument heard on August 12–15, 19–22, 28–29, 2008, and September 3–5, 2008. From May to August 2008, the parties conducted a substantial amount of discovery, including tours of five jail facilities with experts, review of medical records at each facility, and numerous depositions of fact and expert witnesses.

Based upon the pre-hearing and post-hearing briefing, oral argument, and the evidence presented, the Court made findings of fact and conclusions of law on October 22, 2008, 2008 WL 4699770. (Doc. # 1634.) With respect to the Amended Judgment, the Court found some provisions exceeded constitutional minimums, some provisions did not exceed constitutional minimums but are no longer necessary to correct current and ongoing violations of federal rights, and some provisions did not exceed constitutional minimums and continue to be necessary to correct current and ongoing violations of federal rights of pretrial detainees. The Court expressly found:

> 475. .... Plaintiffs have proven, or Defendants failed to disprove, current

and ongoing violations of constitutional right and of the Amended Judgment as originally written or as narrowed by the Second Amended Judgment. Defendants are in breach of the Amended Judgment as found in these findings and conclusions and as it is restated and narrowed by the Second Amended Judgment entered this day.

. . . .

478. Pursuant to 42 U.S.C. § 1988(b) for the award of attorney fees, Plaintiffs are the prevailing parties on Defendants' Renewed Motion to Terminate the Amended Judgment (doc. # 906) and its predecessors.

479. Subject to the limitations of 42 U.S.C. § 1997e(d), Plaintiffs are entitled to award of attorney fees incurred in defending against the motion. Fees may be claimed under the procedures in Fed.R.Civ.P. 54(d)(2) and LRCiv 54.2 upon entry of this order. If enforcement proceedings become necessary, future fees may be claimed and will be determined and awarded at appropriate intervals during the enforcement proceedings.

On October 22, 2008, the Court also entered the Second Amended Judgment, which vacated the Amended Judgment as to future effect and restated the portions of the Amended Judgment that continue in effect, as originally written or as modified. (Doc. # 1635.) The Second Amended Judgment ordered prospective relief regarding the numbers of pretrial detainees housed in cells and placed in holding cells; the maximum temperature in housing of pretrial detainees taking prescribed psychotropic medications; cleaning supplies and sanitization of cells prior to occupancy by pretrial detainees; toilets, sinks, toilet paper, and soap in intake areas and court holding cells; receiving screenings; access to care for serious medical and mental health needs; continuity of prescription medications; continuous monitoring in intake areas; access to toilet and wash basin facilities in intake areas; provision of a blanket and a bed or mattress for pretrial detainees held in an intake area for more than twenty-four hours; outdoor exercise; food; visual observation of pretrial detainees in intake areas, court holding cells, the psychiatric unit, and segregation units; incident reports; and compliance records and quarterly summaries.

On October 28, 2008, Plaintiffs filed their Motion for Attorneys' Fees and Nontaxable Costs. (Doc. # 1640.) Oral argument on the motion was held on March 27, 2009. (Doc. # 1791.)

## II. Legal Standard

Any award of attorneys' fees and nontaxable costs in this civil rights action by pretrial detainees must be authorized by 42 U.S.C. § 1988 and comply with limits imposed by 42 U.S.C. § 1997e(d). Section § 1997e(d)(1) begins:

> In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that . . . .

The Tenth Circuit has described the relationship between § 1988 and § 1997e(d) as follows:

> It is worth remembering that the American Rule is that the losing party in litigation is not required to reimburse the prevailing party's attorney fees. An award of attorney fees under 42 U.S.C. § 1988 is a departure from general practice, presumably designed as an incentive to plaintiffs to engage in litigation to vindicate civil rights. Section 1997e(d) reduces that incentive in civil-rights suits by prisoners. . . .

*Robbins v. Chronister,* 435 F.3d 1238, 1244 (10th Cir.2006) (citation omitted). *See also*

*Dannenberg v. Valadez,* 338 F.3d 1070, 1075 (9th Cir.2003) (a reasonable fee award under § 1997e(d) required consideration of the degree of success analyzed under § 1988 principles); *Siripongs v. Davis,* 282 F.3d 755, 757 (9th Cir.2002) (where prisoner sought fees under § 1988, his recovery was restricted by the PLRA); *Johnson v. Daley,* 339 F.3d 582, 593–94 (7th Cir.2003) (en banc) (award of fees under § 1997e(d) required satisfaction of the reasonableness requirement in § 1988).

### A. Section 1988

 In any action or proceeding to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Prevailing parties in civil rights litigation "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotations and citation omitted). To qualify as a "prevailing party":

> ... a civil rights plaintiff must obtain at least some relief on the merits of his claims. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement.... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citations omitted). The magnitude of the relief does not affect a plaintiff's eligibility for a fee award under § 1988. *Id.* at 114, 113 S.Ct. 566.

 After determining the plaintiff is the prevailing party, the court must calculate a reasonable fee award, which usually involves a two-step process:

> First, the court must calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation.

*Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1119 (9th Cir.2000) (citations and footnote omitted). The Kerr factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975); *Morales v. City of San Rafael,* 96 F.3d 359, 363–64 & n. 8 (9th Cir.1996); see LRCiv 54.2(c)(3). Factors (1) through (4) and (6) are taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation. *Morales,* 96 F.3d at 364 n. 9. Factors (5) and (7) through (12) are considered in determining whether to adjust the presumably reasonable lodestar figure. *Id.*

 Under § 1988, a district court may, in its discretion, reduce a fee award based on "limited success" achieved by applying another two-step process. *Hensley*, 461 U.S. at 434–437, 103 S.Ct. 1933; *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir.2001). First, the court determines whether the plaintiff failed to prevail on claims unrelated to claims on which he succeeded. *Id.* (both). To be "unrelated," claims must be "entirely distinct and separate" from claims on which the plaintiff prevailed. *Sorenson*, 239 F.3d at 1147; *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir.1995). Work on related claims are deemed to have been "expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. The final fee award may not include time expended on unrelated, unsuccessful claims. *Id.* As a general rule, under § 1988:

> [P]laintiffs are to be compensated for attorneys' fees incurred for services that contribute to the ultimate victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims.

*Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir.1991).

 Second, the court determines whether the hours reasonably expended on the litigation are commensurate with the significance of the overall relief plaintiff obtained. *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933; *Sorenson*, 239 F.3d at 1147. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933; *Sorenson*, 239 F.3d at 1147. "A plaintiff may obtain excellent results without receiving all the relief requested." *Sorenson*, 239 F.3d at 1147; *see Friend v. Kolodzieczak*, 72 F.3d 1386, 1390–91 (9th Cir.1995) (inmate plaintiffs prevailed on a significant portion of relief sought by gaining expanded access to Roman Catholic services and sacraments and explicit, written acknowledgment of the right to at least limited use of rosaries and scapulars even though the district court granted defendants' motion for summary judgment on the issue of whether jail officials were required to permit inmates unlimited access to rosaries and scapulars at all times). In determining the extent of a plaintiff's success, a district court should consider significant nonmonetary results achieved not only for the plaintiff, but also for other members of society. *Morales*, 96 F.3d at 365.

**B. Section 1997e(d)**

 Under the PLRA,

In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
> (B) (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C. § 1997e(d)(1) (footnote omitted). "[W]hen subsections (A) and (B) are read together, it is apparent that a plaintiff is entitled to fees incurred in enforcing a judgment entered upon proof that the plaintiff's constitutional rights had been violated." *Webb v. Ada County*, 285 F.3d 829, 834 (9th Cir.2002). Moreover, the PLRA defines relief as "all relief in any

form that may be granted or approved by the court, and includes consent decrees." *Id.* at 834–35 (quoting 18 U.S.C. § 3626(g)(9)). Thus, the PLRA permits compensation for attorneys' fees incurred for postjudgment enforcement of court orders and a consent decree as well as for "proving an actual violation of the plaintiff's rights." *Id.* at 835. *See also Cody v. Hillard,* 304 F.3d 767, 776 (8th Cir.2002) (subsection (A) must permit some fee awards for enforcement work to allow some effect to (B)(ii)). Further, postjudgment enforcement includes defending against efforts to terminate a consent decree. *Id.* at 777.

Section 1997e(d)'s limitation of a fee award to fees "directly and reasonably incurred in proving an actual violation" and "proportionately related to the court ordered relief for the violation," in effect, codifies *Hensley* requirements that district courts award only fees related to successful claims and commensurate with the extent of success. *See, e.g., Riley v. Kurtz,* 361 F.3d 906, 916 (6th Cir.2004):

> To this court's mind, the "related claim" limitation set out in *Hensley* has been incorporated into the fee limitation section of the PLRA. Although stated differently, this limitation on attorney's fees is like the limitation in the PLRA— attorney's fees are only available if "the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights ...." 42 U.S.C. § 1997e(d)(1)(A).

During oral argument, counsel for the Board Defendants argued that after enactment of the PLRA, *Hensley* no longer applies in prisoner civil rights cases. Because this argument had not been briefed, both parties were permitted to submit supplemental briefing on the legislative history of § 1997e(d)(1) and the intended effect of § 1997e(d)(1) on application of the *Hensley* standards. The legislative histo-

ry submitted shows that Congress intended the PLRA to deter frivolous prisoner litigation and to prevent states from being forced to pay excessive amounts for attorneys' fees incurred proving minimal violations of prisoners' rights. None of the legislative history submitted refers to *Hensley* or indicates legislative intent to overrule judicial law on fee awards under § 1988. A House Report regarding a draft bill that included most of § 1997e(d)(1) except for (d)(1)(B)(ii), which permits fees for enforcement, indicates the fee subsection is intended to "narrow" the circumstances in which fees may be awarded:

> [I]t narrows the judicially created view of a "prevailing party" so that a prisoner's attorney will be reimbursed only for those fees reasonably and directly incurred in proving an actual violation of a federal right. Narrowing the definition of "prevailing party" will eliminate both attorney fees that penalize voluntary improvements in prison conditions and attorney fees incurred in litigating unsuccessful claims, regardless of whether they are related to meritorious claims. While this provision eliminates the financial incentive for prisoners to include numerous non-meritorious claims in sweeping institutional litigation, it retains the financial incentive to bring lawsuits properly focused on prison conditions that actually violate federal law.

(Doc. #1794–2, Exh. A, H.R.Rep. No. 104–21 at 28 (Feb. 6, 1995)). *See Riley,* 361 F.3d at 914. Reviewing this House Report in *Riley,* the Sixth Circuit concluded that Congress intended, in prisoner civil rights litigation, to limit the definition of prevailing party to prisoners who satisfy the conditions of § 1997e(d)(1), but also held § 1997e(d)(1)(A) incorporated *Hensley's* "related claim" limitation. *Id.* at 915–16.

The only apparent contradiction between the House Report and *Hensley* relates to whether fees incurred on unsuccessful claims *related* to successful claims are compensable. Under *Hensley*, fees incurred for unsuccessful claims may be awarded if the unsuccessful claims are related to the successful claims, but the House Report suggests otherwise. The Ninth Circuit, however, ordered a district court deciding a fee award under § 1997e(d)(1) to consider the "degree of success" under *Farrar* and *Hensley* where the plaintiff lost two claims on summary judgment and prevailed against four of eight defendants on another claim. *Dannenberg v. Valadez*, 338 F.3d 1070, 1075–76 (9th Cir.2003). The Ninth Circuit did not direct the district court to deviate from *Hensley* and its progeny, and its summary description of the claims suggests the unsuccessful claims were distinct and separate from the successful claims. This Court must follow Ninth Circuit precedent.

Moreover, Plaintiffs were not required to prove violations or to defeat Defendants' motion (which they did) in order to obtain a fee award. They would be entitled to a fee award even if all they did was to enforce relief previously ordered by defending against Defendants' motion. It was Defendants' burden to prove the absence of constitutional violations for each provision of the Amended Judgment they sought to be terminated.

■■■ Although § 1997e(d)(1) may not restrict a fee award beyond limitations imposed by *Farrar* and *Hensley*, § 1997e(d)(3) limits the fee award by establishing a maximum hourly rate for attorneys' fees. The maximum hourly rate upon which an award for attorneys' fees may be based is 150 percent of the hourly rate established for payment of court-appointed counsel under 18 U.S.C. § 3006A. The parties agree the rate applicable here is $169.50 per hour.

## III. Analysis

### A. Prevailing Party Under § 1988

■■■ To succeed on their motion to terminate the Amended Judgment, Defendants were required to prove the relief granted by the Amended Judgment is not narrowly drawn, extends further than necessary to correct the violation of a federal right, or is not the least intrusive means necessary to correct a violation of a federal right and that prospective relief is not necessary to correct a current and ongoing violation. *Gilmore v. California*, 220 F.3d 987, 1007–08 (9th Cir.2000); 18 U.S.C. § 3626(b)(2). Defendants failed to satisfy their burden of proof in each of the categories of disputed provisions (*e.g.*, food, outdoor recreation, sanitation, medical care), and Plaintiffs succeeded in proving at least one constitutional violation in each of the categories except food. Most of the prospective relief Plaintiffs obtained was substantial.

Defendants contend that Plaintiffs are not the prevailing party as to all issues because Plaintiffs withdrew their opposition to the termination of certain paragraphs of the Amended Judgment shortly before or during the evidentiary hearing and Plaintiffs did not obtain all of the relief they sought regarding other areas of dispute. Although Defendants' contentions are relevant to whether the fee award should be reduced for limited success, failure to obtain all of the relief sought does not prevent or deprive Plaintiffs of prevailing party status under § 1988.

Plaintiffs successfully defended against the termination of substantial portions of the Amended Judgment. Further, Plaintiffs obtained a new enforceable judgment that provided relief on the merits of their claims and materially altered the legal relationship between the parties by modifying the Defendants' behavior in a way that

directly benefited the Plaintiffs. Therefore, under § 1988, Plaintiffs qualify as the prevailing party for award of attorneys' fees. *See Farrar*, 506 U.S. at 111–12, 113 S.Ct. 566.

### B. The Initial Lodestar Figure With Hourly Rate Limited by § 1997e(d)

 The initial lodestar figure is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The parties agree that § 1997e(d)(3) caps the hourly rate at $169.50, a rate that is far below reasonable and market value in light of the qualifications and experience of Plaintiffs' lead counsel. Plaintiffs have submitted itemized billing statements to support their request of $1,239,491.63 in attorneys' fees, not exceeding the hourly rate of $169.50.[1]

To determine the reasonableness of the award, the Court considers the following *Kerr (Hensley)* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; and (6) whether the fee is fixed or contingent. *See Kerr*, 526 F.2d at 70; *Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. 1933; *Morales*, 96 F.3d at 364 n. 9; LRCiv. 54.2(c)(3).

Representing the class of all pretrial detainees in the Maricopa County Jails, which includes five different facilities, a centralized intake area, court holding cells, medical facilities, and a psychiatric unit, to defend and enforce the Amended Judgment for more than five years and to obtain the prospective relief ordered in the Second Amended Judgment required substantial time and labor. Given PLRA's intent that motions to terminate prospec-

tive relief regarding prison conditions be resolved quickly, that resolution of Defendants' motion to terminate the Amended Judgment had been delayed for more than seven years, and that Plaintiffs had been deprived of relief during the automatic stay of the Amended Judgment during that period, it was necessary for the parties to conduct substantial discovery and preparation for an evidentiary hearing in less than four months.

Although most of the questions presented were not novel, many were difficult and complex. Determining the constitutionality of jail conditions requires weighing risk to a pretrial detainee's health and safety against the need for restrictions to protect the security of all pretrial detainees, detention officers, and the community. Procedural issues in this case tended to be complex and included some that were novel. Conducting discovery, marshaling evidence on a wide range of complex issues, and presenting evidence during a thirteen-day evidentiary hearing required considerable skill.

Representing Plaintiffs as described above required virtually full-time work by four attorneys for a period of four months. Further, the commitment of these attorneys' time and the advancement of costs limited their ability to take on new cases. Plaintiffs' counsel will not receive any compensation for their work in this case except as awarded by the Court.

The initial lodestar figure requested by Plaintiffs, which does not exceed the maximum hourly rate permitted by the PLRA, is reasonable in light of the foregoing consideration of *Kerr* factors.

---

1. Plaintiffs reduced their initial request to adjust for clerical errors in their billing statements.

## C. Adjustment of the Lodestar Figure

To determine whether the presumptively reasonable lodestar figure, capped under § 1997e(d), should be adjusted upward or downward, the Court considers the remaining *Kerr* factors, the degree of Plaintiffs' success, and compliance with conditions imposed by § 1997e(d).

### 1. *Kerr* Factors Not Subsumed in the Initial Lodestar Calculation

■ In deciding whether to adjust the initial lodestar figure, the Court considers: (5) the customary fee; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Kerr,* 526 F.2d at 70; *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933; *Morales,* 96 F.3d at 364 n. 9; LRCiv. 54.2(c)(3).

The hourly rate requested by Plaintiffs and mandated by the PLRA is far less than the customary hourly rate. The circumstances imposed significant time limitations on counsel for all parties. Plaintiffs' lead counsel are extremely experienced and capable attorneys. Written work and oral advocacy performed on behalf of Plaintiffs were of very high quality. This case is considered "undesirable" because § 1983 class actions on behalf of prisoners involving the conditions of confinement are exceedingly fact-intensive, time-consuming, and expensive to litigate, and the PLRA restricts the hourly rate for attorneys' fees below market. Counsel's professional relationship with Plaintiffs began more than five years ago. The amount sought here is reasonable in light of awards in similar cases.

Plaintiffs successfully defended against Defendants' motion to terminate the Amended Judgment and obtained significant prospective relief in every major area in which they sought relief. Plaintiffs did not seek monetary damages.

Plaintiffs do not request that the initial lodestar figure be adjusted upward, and the Court finds no basis for adjusting the initial lodestar figure downward in consideration of the remaining *Kerr* factors.

### 2. Degree of Success

■ Defendants contend that Plaintiffs' fee award should be reduced for limited success on their claims. However, Defendants bore the burden of proof on their motion to terminate the Amended Judgment and they failed to carry their burden on some or all issues in every major area litigated. Applying the *Hensley* two-step process for reducing a fee award for "limited success," the Court finds (1) Plaintiffs did not fail to prevail on any claims unrelated to claims on which they succeeded, and (2) the hours reasonably expended on the litigation are commensurate with the significance of the overall relief Plaintiffs obtained.

Defendants carried their burden of proof on overcrowding in some areas of the Towers jail, the Estrella jail, and the Durango Housing Units D8 and D9, but they did not on overcrowding in the Towers segregation cells, Madison court holding cells, or 4th Avenue Intake holding cells. Defendants did not carry their burden on proving portable beds will not be used routinely in some jail facilities. Plaintiffs did not contend that pretrial detainees' access to dayrooms is constitutionally required, but they did prove that, under the current conditions, access to dayrooms does not compensate for insufficient outdoor recreation.

Defendants proved they provide inmates with cleaning supplies, but not that they

consistently provide sufficient supplies for effective cleaning to avoid unconstitutional health risks to pretrial detainees. Defendants failed to prove they provide administrative segregation pretrial detainees with adequate opportunity to clean their cells to avoid unconstitutional health risks to pretrial detainees. Defendants failed to prove cells are consistently cleaned and sanitized prior to occupancy by pretrial detainees to avoid causing unconstitutional health risks.

Defendants proved that ambient temperatures in housing areas generally do not exceed constitutional limits, but did not prove the temperatures in which pretrial detainees taking prescribed psychotropic medications are housed are safe. Defendants proved fire protection equipment and procedures meet constitutional requirements and that the Maricopa County Jails are not constitutionally required to conduct fire drills involving pretrial detainees. Defendants proved that although barriers separating detention officers in control towers at the Towers and Estrella jails may delay detention officers in responding to calls for help, the barriers are reasonably related to legitimate governmental objectives of safety and security. However, Plaintiffs proved that detention officers do not adequately monitor pretrial detainees in intake and court holding cells.

Defendants failed to prove they prepare incident reports of all instances of inmate or officer abuse, injuries, violence, assaults, sexual assaults, suicides, deaths, and inmate riots and demonstrations. Plaintiffs proved that incident reports are not always prepared even when a pretrial detainee requires medical treatment as a result of an incident.

Defendants proved that Defendants' current provision of functioning toilets, showers, and sinks does not violate pretrial detainees' constitutional rights in housing units, but did not prove the provision of toilets, sinks, toilet paper, and soap is con-stitutionally adequate in the 4th Avenue Intake holding cells and the Madison court holding cells. Further, Plaintiffs proved prospective relief remained necessary to ensure that pretrial detainees have access to toilet and wash basin facilities in the holding cells in intake areas and pretrial detainees incarcerated in the intake area for more than twenty-four hours are provided with a blanket and a bed or mattress on which to sleep.

Defendants attempted to prove, but did not, that they provide general population pretrial detainees opportunity for outdoor exercise one hour per day, six days per week at the Towers, Durango, and Estrella jails. Defendants also attempted to prove, but did not, that pretrial detainees can do physical exercise in their cells, or in their cells and dayrooms, sufficient to meet their constitutional entitlement. Although Plaintiffs sought to obtain opportunity for outdoor exercise at least one hour per day, six days per week, the Court found that one hour per day, four days per week, would satisfy the constitutional minimum. However, Defendants failed to prove they offer general population pretrial detainees opportunity for outdoor exercise at least one hour per day, four days per week, and prospective relief remained necessary to correct a current and ongoing violation of the pretrial detainees' federal right to outdoor exercise. The Court further found that the 4th Avenue jail recreation yards do not provide sufficient space to satisfy pretrial detainees' constitutional right to outdoor exercise one hour per day, four days per week, and permitting pretrial detainees to exercise outdoors without drinking water when the outside temperature exceeds 85° F. does not satisfy the constitutionally required opportunity for outdoor exercise. Defendants also failed to prove that pretrial detainees classified as administrative segregation were provid-

ed with constitutionally adequate opportunity for outdoor exercise.

Defendants did not carry their burden of proving that they provide pretrial detainees adequate nutrition. The Court expressly found:

406. Defendant Arpaio cannot establish what edible food inmates actually received during much of the relevant period.

407. Defendant Arpaio cannot establish that pretrial detainees are served adequate nutrition.

408. The Maricopa County Jails dietician's opinion that pretrial detainees are served adequate nutrition is not supported by the evidence, is contrary to evidence, and is unworthy of belief. The Court does not believe it.

(Doc. # 1634.)

Defendants carried their burden of proving pretrial detainees are not deprived of their constitutional right to emergency dental care and that the jail facilities have adequate emergency medical equipment. However, Defendants did not carry their burden in proving that pretrial detainees' access to medical, dental, and mental health care meets constitutional minimums. Among other things, Plaintiffs proved:

177. Systemic deficiencies in the screening process significantly impair continuity of care and result in failure to identify pretrial detainees with immediate medical needs.

216. ... Defendants do not ensure that pretrial detainees receive access to adequate medical and mental health care because Correctional Health Services does not provide timely in-person assessment of the urgency of their need for treatment, is not able to readily retrieve information from pretrial detainees' medical and mental health records and housing records, and does not identify and appropriately treat many pre-

trial detainees with serious mental illness.

233. In addition to inconsistencies in obtaining necessary prescription information during the intake process, Correctional Health Services does not consistently ensure that all pretrial detainees actually receive all prescribed medications as ordered.

(Doc. # 1634.)

■ Therefore, Defendants did not satisfy their burden of proof on any disputed issue that was entirely distinct and separate from the issues on which Plaintiffs successfully defended. The Second Amended Judgment provides significant relief to protect the safety and physical and mental health of pretrial detainees held in one of the largest jail systems in the United States, and the hours reasonably expended on the litigation are commensurate with the significance of the overall relief Plaintiffs obtained.

### 3. Compliance with § 1997e(d) Conditions

■ Plaintiffs may receive an award of attorneys' fees under § 1997e(d)(1) for fees directly and reasonably incurred in either proving a violation of Plaintiffs' rights or enforcing relief ordered for a violation in an amount that is proportional to the relief ordered for the violation. Plaintiffs' efforts to prolong the efficacy of the Amended Judgment by defending against Defendants' motion to terminate it was time spent "enforcing" that decree and is fully compensable. *See Cody v. Hillard,* 304 F.3d 767, 777 (8th Cir.2002). Moreover, Plaintiffs not only successfully defended against termination of most of the disputed areas of relief, they also proved numerous current and ongoing violations of their rights. As found above, the amount of attorneys' fees requested is

proportional to the relief ordered for the violation.

The Court finds that the corrected amount requested for reimbursement of attorneys' fees, $1,239,491.63, was directly and reasonably incurred in proving an actual violation of Plaintiffs' rights or in enforcing the relief ordered for a violation.

### D. Fees Incurred Before Appointment as Class Counsel

■ Defendants contend that Plaintiffs are not entitled to attorneys' fees and non-taxable costs prior to their appointment as class counsel on April 1, 2008. The PLRA does not require appointment as class counsel for award of attorneys' fees and non-taxable costs. *See* 42 U.S.C. § 1997e.

■ In April 2008 the Court addressed this issue when Defendants moved for reconsideration of the appointment of counsel for the Plaintiff class. (Doc. ## 1231, 1239.) In 1998 Plaintiffs and Defendants had stipulated to the appointment of Theodore C. Jarvi to represent the Plaintiff class for consent decree termination issues under 18 U.S.C. § 3626(b) of the PLRA. Under the stipulation, the County agreed to pay Jarvi's reasonable fees at the rate of $150 per hour and to pay Jarvi for the assistance of paralegals at $65 per hour and other attorneys at their actual rates, not to exceed $150 per hour. The stipulation also provided:

Mr. Jarvi may utilize his own staff or retain contract attorneys or paralegals to assist him in the representation; provided, however, the County shall have no obligation to compensate (and no obligation to reimburse Mr. Jarvi for compensation of) any attorney, paralegal or law firm that is, becomes or has been involved in any other prisoner rights, prison conditions or similar cases involving the County and/or the MCSO.

On April 1, 2008, Judge Carroll terminated Jarvi's appointment as Plaintiff class counsel and granted the motion for appointment of attorney Debra Hill of Osborn Maledon, P.A., and attorney Margaret Winter of the ACLU National Prison Project as class counsel. (Doc. # 1221.) Judge Carroll further ordered that Hill and Winter "may request reimbursement of fees pending further Order of the Court at an hourly rate no greater than that set by the Prison Litigation Reform Act (150% of the prevailing CJA rate at the time the work is done)." (*Id.*)

On April 8, 2008, Defendants moved for reconsideration of the order appointing new class counsel. (Doc. # 1231.) Defendants urged the Court to "determine now rather than later that Defendants should not be responsible for any attorneys' fees and costs, if at all, that were incurred by Hill and Winter (and Winter's predecessor, David Fathi) prior to the time of their appointment" and "reconsider whether Hill and Winter should be compensated under the PLRA or the same fee structure obtained by Ted Jarvi." (*Id.*) On April 10, 2008, the case was assigned to this judge. The April 17, 2008, 2008 WL 1776901, order ruling on Defendants' motion for reconsideration states in part:

Defendants object to compensating Ms. Hill and Ms. Winter under the Prison Litigation Reform Act ("PLRA") and contend it is unclear when Ms. Hill and Ms. Winter would be compensated. However, Fed.R.Civ.P. 23(h) provides, "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Absent an agreement between parties regarding compensation for Ms. Hill and Ms. Winter, any attorneys' fee award will be made as authorized by law. Under Rule 23(h) and in the context of the January 24, 2008 hearing (doc. # 1208) before Judge Earl H. Carroll regarding the appointment of Plaintiffs' class coun-

sel and papers the parties have filed, the April 1, 2008 Order means that Ms. Hill's and Ms. Winter's compensation will be determined under the governing statutory authority, *i.e.*, 18 U.S.C. § 3626 and 42 U.S.C. §§ 1997(e), 1983, 1988, unless the parties reach a different agreement. Under § 1988, the court may award a reasonable attorney's fee to the prevailing party. Under § 1997e, the court may not award fees except to the extent the fee was directly and reasonably incurred in proving an actual violation of Plaintiffs' rights protected by a statute pursuant to which a fee may be awarded under § 1988 and the fee was directly and reasonably incurred in enforcing the relief ordered for the violation. Section 1997e also limits the hourly rate to 150 percent of the hourly rate established for payment of court-appointed criminal defense counsel.

(Doc. # 1239.)

The agreement between the County and Jarvi that the County would pay Jarvi, but would not pay associated counsel who had "been involved in any other prisoner rights, prison conditions or similar cases involving the County and/or the MCSO," does not bind the Court, Plaintiffs, or Plaintiffs' current counsel. Neither the agreement nor the date on which Plaintiffs' counsel were appointed as class counsel limits award of attorneys' fees and non-taxable costs under §§ 1988 and 1997e(d).

### E. Fees Requested by the Arizona Chapter of the ACLU

Defendants contend that fees incurred by the Arizona Chapter of the ACLU should be excluded from the award because the Arizona Chapter of the ACLU was not appointed as Plaintiffs' class counsel. As stated above, appointment as class counsel is not a prerequisite to award of attorneys' fees under §§ 1988 and 1997e(d).

### F. Hourly Rates for Paralegals and Law Clerks Under the PLRA

■ Section 1997e(d)(3) establishes a maximum hourly rate for attorneys' fees. Defendants incorrectly view the statute as establishing a discount, rather than a maximum. They urge the Court to calculate the discounts the PLRA imposes on the lead attorneys in this case, whose customary hourly rates exceed the PLRA maximum, and apply those discounts to the hourly rates for their paralegals and law clerks. Following that reasoning, Defendants contend that the rates for paralegals and law clerks employed by Osborn Maledon should be discounted to 45% of their customary rates and those employed by the ACLU should be discounted to 26% of their customary rates. The PLRA limits fee awards to fees "reasonably incurred" and the amount of a fee award to that which is "proportionately related to the court ordered relief," but it does not provide any basis for arbitrarily discounting fees incurred by paralegals and law clerks based on the effect of the PLRA maximum on the lead attorneys' hourly rates.

### G. Non-taxable Costs

■ Defendants object to Plaintiffs' requested non-taxable costs in the following categories: CD duplication charge, DVD duplication charges, color print charges, photocopying charges, collect jail calls, delivery charges, federal express delivery charges, computerized legal research, and individual hard costs. Defendants contend the amounts requested are unreasonable and that some of the expenses were unnecessary.

Plaintiffs reduced their request to adjust for charges improperly included in their initial request for individual hard costs, including expert witness expenses. Plaintiffs have submitted affidavits and documentation to support all of their non-

taxable costs. The Court requested additional information regarding the charges for computerized research and is satisfied that the amount sought is a close approximation of the cost actually incurred by Osborn Maledon.

The Court finds that the corrected amount requested for reimbursement of nontaxable costs, $123,221.77, was directly and reasonably incurred in proving an actual violation of Plaintiffs' rights or in enforcing the relief ordered for a violation.

## H. Clerical Errors

Defendants identified in Plaintiffs' request for attorneys' fees and non-taxable costs several clerical errors, some of which were substantial. In their Reply, Plaintiffs reduced the amounts requested accordingly. During oral argument, Plaintiffs' counsel avowed they had scrutinized their itemized billing statements and were confident of the accuracy of their revised request. Defendants do not dispute this avowal.

## I. Interest

 Plaintiffs initially sought award of interest on the award of attorneys' fees and non-taxable costs pursuant to 28 U.S.C. § 1961(a) from October 28, 2008, the date they filed their motion for award of attorneys' fees. In their Reply Brief they sought award of interest from October 22, 2008, which they described as "the date of the order establishing their entitlement to the award." Defendants contend that interest awarded under § 1961(a) does not begin to accrue until either the Court orders a fee award or Defendants stipulate to one.

Section 1961(a) provides, "[I]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment." Although there is no consensus among the Courts of Appeals that have addressed the issue, the Fifth, Eighth, Ninth, Eleventh and Federal Circuits have adopted the view that "post-judgment interest on an attorneys' fee award runs from the date that the district court enters a judgment finding that the prevailing party is entitled to such an award, or from the date that, by operation of law, the prevailing party becomes entitled to fees, even if the amount of the award is not fixed in that judgment." *Eaves v. County of Cape May,* 239 F.3d 527, 531 (3d Cir.2001).

In *Friend v. Kolodzieczak,* the Ninth Circuit stated:

Interest runs from the date the entitlement to fees is secured, rather than from the date that the exact quantity of fees is set. *Finkelstein v. Bergna,* 804 F.Supp. 1235, 1239–40 (N.D.Cal.1992); *see also Perkins v. Standard Oil Co.,* 487 F.2d 672, 674–76 (9th Cir.1973) (post-judgment interest runs from date attorneys' fees are first awarded even though the fee award is later reduced on appeal).

72 F.3d 1386, 1391–92 (9th Cir.1995) (en banc) (awarding fees under § 1988). In *Friend,* the Ninth Circuit identified "the date on which the entitlement to fees was secured" as the date the Ninth Circuit entered an order for a specified amount of fees and costs related to the litigation on the merits and awarded an unspecified amount of fees and costs related to the fee award litigation. *Id.* at 1392. The Ninth Circuit explained that interest would run on both components of the fee award from the date of the order for fees and costs related to the merits litigation, even though the second portion was not fixed until twenty days later, because plaintiffs' entitlement to fees was secured by the order awarding fees on the merits litigation. *Id.*

In support of its declaration that "[i]nterest runs from the date the entitlement to fees is secured," the Ninth Circuit cited *Finkelstein v. Bergna*, 804 F.Supp. 1235, 1239–40 (N.D.Cal.1992). In *Finkelstein*, the district court awarded interest on fees from the date of an initial judgment finding the plaintiff was entitled to recover reasonable attorneys' fees and costs under § 1988 and referring the determination of those fees and costs to a magistrate judge. *Id.* at 1237, 1239–40. The district court relied on *Jenkins by Agyei v. Missouri*, 931 F.2d 1273 (8th Cir.1991), which affirmed interest on a fee award under § 1988 from "the date the court recognizes the right to such fees in a judgment." *Id.* at 1277. *Jenkins* applied the Fifth Circuit's test from *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983), summarized as: "interest accrues from the date that the party becomes unconditionally entitled to fees, even if those fees are not yet quantified." 931 F.2d at 1276; *see Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 492, 495 (6th Cir.2001) (interest on a fee award runs from the date of entry of the judgment that unconditionally entitles the prevailing party to reasonable attorneys' fees, albeit unquantified). *But see MidAmerica Federal Sav. & Loan Ass'n v. Shearson/American Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir.1992) (rejecting *Copper Liquor* and holding postjudgment interest began to accrue "the date fees were meaningfully ascertained and included in a final, appealable judgment"); *Eaves*, 239 F.3d at 531–32 (adopting minority view that "where the district court enters an order stating that the prevailing party is entitled to a fee award but does not quantify the amount of the award until a later date, post-judgment interest does not accrue until the Court fixes the amount of the award").

Applying the Ninth Circuit rule and the majority rule to this case requires understanding the real procedural character of Plaintiffs' request for attorney fees. This Court made extensive findings of fact and conclusions of law for the benefit of the parties, any reviewing court, and the public. For the convenience of all, the provisions of the 1995 Amended Judgment that remain in effect, as originally drawn or as modified, were restated in a Second Amended Judgment. These artifacts of the process may give an impression that this was a prosecution of a new claim, requiring a separate judgment document to fix an entitlement to fees. In truth, this was a motion, one to lift the 1995 consent Amended Judgment, not a new action. As a motion, it was decided when the Court ruled on it. As a post-judgment motion, it was final and appealable upon entry. 28 U.S.C. § 1291; *see Hilao v. Estate of Marcos*, 103 F.3d 762, 764 (9th Cir.1996). Nothing in the separate order restating the modified Amended Judgment as a Second Amended Judgment (doc. # 1635) needed to address entitlement to attorney fees. The findings of fact, conclusions of law, and order determined Plaintiffs' entitlement to attorney fees, subject to quantifying the amount, in the same sense as a judgment in a fresh action so providing but leaving quantification to future proceedings. October 22, 2008, is "the date the entitlement to fees is secured," *Friend v. Kolodzieczak*, 72 F.3d at 1391, in this atypical procedural context. Therefore, Plaintiffs are entitled to interest on the fee award from that day.

## IV. Conclusion

Under 42 U.S.C. §§ 1988 and 1997e(d), Plaintiffs are entitled to award of attorneys' fees in the amount of **$1,239,491.63** and non-taxable costs in the amount of **$123,221.77**. Plaintiffs are entitled to interest on this award at the federal judgment rate that will accrue from October 22, 2008.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Attorneys' Fees and Non-taxable Costs (doc. # 1640) is granted in the amount of **$1,239,491.63** and nontaxable costs in the amount of **$123,221.77**. Additional fees and expenses accrued since December 5, 2008, may be claimed by May 6, 2009. Defendants may file a response within the time permitted by LRCiv 7.2(c). No reply may be filed unless invited by the Court. The Court will then direct entry of judgment in the total amount awarded, with interest from October 22, 2008.

## ORDER

Before the Court is Plaintiffs' Amended Application for Attorneys' Fees and Related Non-taxable Expenses for Work Performed December 6, 2008 Through April 30, 2009 (doc. # 1801 amended by doc. # 1826).

On April 20, 2009, under 42 U.S.C. §§ 1988 and 1997e(d), the Court granted Plaintiffs' motion for attorneys' fees and non-taxable costs in the amount of $1,239,491.63 for fees and $123,221.77 for non-taxable costs, plus interest on the award at the federal judgment rate accruing from October 22, 2008. (Doc. # 1799.) The Court further ordered that Plaintiffs could claim by May 6, 2009, additional fees and expenses accrued since December 5, 2008, and that the Court would then direct entry of judgment in the total amount awarded, with interest from October 22, 2008. In response to Plaintiffs' application for fees and expenses accrued after December 5, 2008, Defendants objected to (1) the hourly rate requested, (2) time spent discussing settlement issues with attorneys who do not represent Defendants, (3) fees and costs for allegedly unnecessary work and expenses, and (4) interest accrued from October 22, 2008. (Doc. # 1809.) In their Reply, Plaintiffs withdrew their request for interest accrued from October 22, 2008, reduced their request for non-taxable costs by $448.91 for a clerical error, and submitted additional documentation supporting their requested hourly rate. (Doc. # 1822.) Because the additional documentation indicated the requested hourly rate became effective January 1, 2009, not October 1, 2008, as Plaintiffs initially contended, the Court ordered Plaintiffs leave to amend their fee application accordingly. (Doc. # 1823.) As amended, Plaintiffs request award of $97,029.55 in attorneys' fees and $4,970.52 in non-taxable costs with statutory interest from entry of the Order until the award is paid.

### 1. Current Maximum Hourly Rate

■ Under 42 § 1997e(d)(3), the hourly rate on which Plaintiffs' attorneys' fee award is based may not exceed 150 percent of the hourly rate established under § 3006A of Title for court-appointed counsel. The hourly rate "established under § 3006A" is the amount authorized by the Judicial Conference, not the amount actually appropriated by Congress to compensate court-appointed counsel in criminal proceedings. *Webb v. Ada County*, 285 F.3d 829, 839 (9th Cir.2002).

Plaintiffs' amended application for attorneys' fees is based on an hourly rate equal to 150% of $118.00, which is $177.00, effective January 1, 2009, and on an hourly rate of $169.50 prior to January 1, 2009. Defendants objected to Plaintiffs' initial fee application as not providing sufficient authority that the hourly rate had increased from $169.50 to $177.00. Plaintiffs supported their initial application with the Statement of Honorable Julia S. Gibbons Before the Subcommittee on Financial Services and General Government of the House Committee on Appropriations on March 12, 2008, which conveys the Judicial Conference's request of "$17.5 million to increase the non-capital panel attorney rate to $118 per hour, effective January

2009." Subsequently, Plaintiffs' counsel obtained from the Administrative Office of the United States Courts additional documentation of the Judicial Conference's request to Congress for an increase in the hourly rates for court-appointed counsel for FY 2009 and FY 2010. Attached to Plaintiffs' Reply are extracts from the Judiciary's Congressional Budget Summary showing the Judiciary's budget request for panel attorney payments, including $17.5 million sought to increase the panel attorney non-capital rate to $118 per hour, effective January 1, 2009. (Doc. # 1822–2 at 6.)

Thus, effective January 1, 2009, the hourly rate "established under § 3006A" is $118, and the maximum hourly rate for fee awards under 42 § 1997e(d)(3) is $177.00.

### 2. Time Spent Discussing Settlement Issues with Attorneys Who Do Not Represent Defendants

Under the heading, "PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES FOR WORK INVOLVING SETTLEMENT WITH COUNSEL OTHER THAN COUNSEL OF RECORD," Defendants object to attorneys' fees for "5.2 hours on settlement issues" without identifying any specific time entries to which they object. Defendants contend that "Plaintiffs have been exploring and discussing 'settlement' with Mike Manning and Tom Irvine, neither of whom are counsel of record and neither of whom represent Sheriff Arpaio or the Board Defendants."

However, Plaintiffs' billing records show only four time entries mentioning Tom Irvine, none of which refer to "settlement." On March 19, 2009, D. Hill billed 0.2 hours for "conference with Peggy Winter re possible co-counsel of Tom Irvine and effects of same." On March 31, 2009, L. Hammond billed 0.5 hours for "Review all open issues and plan for meeting with Irvine."

On April 22, 2009, L. Hammond billed 0.8 hours for "Telephone conference with Tom Irvine and office conference with Debbie Hill regarding same." On April 22, 2009, D. Hill billed 0.3 hours for "Conference with Larry Hammond re conference with Tom Irvine; email to Tom Irvine forwarding attorneys' fees order."

 Plaintiffs' billing records include several time entries involving Mike Manning's declaration regarding attorneys' fees and hourly rates in support of Plaintiffs' initial fee application, but only two entries that refer to "settlement." On January 8, 2009, D. Hill billed 0.3 hours for "extended conference with Mike Manning re possible settlement strategy." On January 12, 2009, D. Hill billed 0.1 hours for "conference with Mike Manning re possible settlement of case." No fees are requested for Manning's time. Charging 0.4 hours for consulting with an outside attorney regarding a possible settlement strategy is not unreasonable or excessive.

### 3. Fees and Costs for Allegedly Unnecessary Work and Expenses

 Defendants object to 13.3 hours billed by Osborn Maledon, but do not identify specific time entries to which they object and do not present credible bases for their objections. They state, "Plaintiffs' counsel represents the class and therefore has access to the class," and so it is unnecessary for Plaintiffs' counsel to communicate with criminal defense attorneys representing individual Plaintiffs. But they also contend it is unnecessary for Plaintiffs to communicate with individual Plaintiffs or their families because at this stage of the proceedings, Plaintiffs' counsel needs only to monitor compliance with the Second Amended Judgment. Defendants further argue that by answering individual Plaintiffs' telephone calls and reading their letters, Plaintiffs' counsel have positioned

themselves for a windfall. But charging 0.1 hours for each telephone call answered or letter read at below market rates cannot be considered a windfall.

Moreover, Plaintiffs' counsel are not merely "monitoring compliance" where Defendants have not yet reached compliance with the Second Amended Judgment. Under 42 U.S.C. § 1997e(d)(1), Plaintiffs' counsel are entitled to fees "directly and reasonably incurred in enforcing the relief ordered for the violation [of the plaintiff's rights]." They are entitled to fees incurred communicating with individual Plaintiffs, the families, and their defense attorneys. Further, they are entitled to reimbursement of $225.00 paid for a private investigator to obtain public records of fees paid to Defendants' attorneys for the purpose of establishing the reasonableness of Plaintiffs' attorneys fees.

Defendants also object to attorneys' fees and costs related to Plaintiffs' counsel Margaret Winter traveling to Phoenix for court proceedings instead of appearing telephonically. Winter's personal appearance was not unreasonable in light of the purpose, length, and significance of the proceedings and the need for consultation among all of the attorneys during the proceedings to resolve certain issues that arose during the proceedings.

Defendants also object to reimbursement of costs for Federal Express delivery ($168.99), meals ($222.20), mileage, parking, and taxi services ($132.20 combined). None of these is unreasonable, unnecessary, or excessive.

Defendants identified one non-taxable cost that appears be a duplicate billing of $448.91 for "Sir Speedy—Discovery Disk Copies—07/28/08" identified as Slip ID # 26796 in both the pending fee and cost application and the previous one (doc. # 1747–3 at 143). In their Reply, Plaintiffs acknowledged this error and reduced their request for nontaxable costs accord-

ingly. Therefore, the total amount requested and to be awarded for non-taxable costs is $4,970.52.

In conclusion, under 42 U.S.C. §§ 1988 and 1997e(d), Plaintiffs are entitled to award of attorneys' fees in the amount of $97,029.55 and non-taxable costs in the amount of $4,970.52 for work performed December 6, 2008, through April 30, 2009, in addition to attorneys' fees in the amount of $1,239,491.63 and non-taxable costs in the amount of $123,221.77 for work performed before December 6, 2008.

IT IS THEREFORE ORDERED that Plaintiffs' Amended Application for Attorneys' Fees and Related Non-taxable Expenses for Work Performed December 6, 2008 Through April 30, 2009 (doc. # 1801 amended by doc. # 1826) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment pursuant to Fed. R.Civ.P. 54(d) and LRCiv 54.2 in favor of Plaintiffs against Defendants in the amount of **$1,239,491.63** for attorneys' fees and **$123,221.77** for non-taxable costs plus interest at the federal rate from October 22, 2008, until paid.

IT IS FURTHER ORDERED that the Clerk enter judgment pursuant to Fed. R.Civ.P. 54(d) and LRCiv 54.2 in favor of Plaintiffs against Defendants in the amount of **$97,029.55** for attorneys' fees and **$4,970.52** for non-taxable costs plus interest at the federal rate from the date of this Order until paid.